IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-HC-02306-M

| | |
|---|---|
| TIMOTHY WAYNE YOUNGS, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>STATE OF NORTH CAROLINA, )<br>)<br>Respondent. ) | **ORDER** |

On December 11, 2018, Timothy Wayne Youngs ("petitioner"), a state inmate proceeding *pro se*, filed this petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. Pet. [D.E. 1]. The court allowed the action to proceed. [D.E. 7]. On July 17, 2019, respondent filed a partial answer [D.E. 11], a motion to dismiss the petition as time-barred under 28 U.S.C. § 2244(d)(1), see Mot. [D.E. 12], and a memorandum in support of the motion to dismiss [D.E. 13]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified petitioner about the pending motion to dismiss, the response deadline, and the consequences of failing to respond. [D.E. 14]. On July 30, 2019, petitioner filed a response in opposition to the motion to dismiss. [D.E. 15]. Petitioner subsequently filed two additional letters in support. See [D.E. 16, 17]. For the reasons discussed below, the court grants respondent's motion to dismiss.

Background:

The facts of petitioner's criminal case were summarized on direct appeal as follows:

At defendant's trial, the State presented evidence that defendant and his three children moved to North Carolina in January 1994, along with defendant's girlfriend, Tuesday Bancroft (Tuesday), and Tuesday's daughter. At this time, the victim in the case, one of defendant's daughters, was in kindergarten or first grade. We shall refer to her in this opinion as "A."

When "A" was in the first or second grade, Tuesday and her daughter temporarily moved out of the residence after a dispute with defendant. During their absence, defendant engaged in vaginal, anal and oral intercourse with "A." "A" testified that on several occasions while the children were taking their naps, defendant would ask her to come into his room and undress. After instructing "A" to get on the bed, he would assault her. Defendant instructed "A" not to tell anyone about the assaults. In particular, "A" testified of an incident in December 1995 when social service worker Diane Setaro (Setaro) visited the Youngs' residence, and defendant told "A" not to tell Setaro about the assaults.

"A" first told Tuesday's daughter about the incidents but asked her not to tell anyone. "A" also confided to a girl next door about what defendant had done to her, and two years later she told Tuesday about the assaults. On 16 January 1998, when "A" was in the fourth grade, she visited her school counselor Carolyn Cogsdale (Cogsdale) and described her living situation, her assigned chores, and the whippings she received daily. Although "A" visited Cogsdale on her own volition, she had also been referred to Cogsdale by her teacher because of her sadness and unkempt appearance. After this meeting, Cogsdale notified the Department of Social Services of the possibility of child neglect and abuse. During meetings between 16 January 1998 and 21 January 1998, "A" revealed to Cogsdale that defendant had sexually abused her. Cogsdale again contacted the Department of Social Services and continued to see "A" on a daily basis until the end of the school year.

Setaro visited the Youngs' residence a second time on 22 January 1998 to discuss allegations of abuse and neglect. The next day, Setaro visited "A" at school, where "A" revealed that defendant had sexually abused her. "A" also described the sexual abuse to Investigator Leslie Moore of the Brunswick County Sheriff's Department on 13 March 1998.

On 3 February 1998, "A" was examined by Dr. James Forstner (Dr. Forstner). He determined that "A"'s hymen was abnormal. His examination results were consistent with vaginal and oral penetration and suggestive of anal penetration. On 19 February 1998, "A" met with psychologist Diane Lattimer (Dr. Lattimer) and continued to visit her at least forty-five times prior to trial. Dr. Lattimer observed that "A" was disheveled, shy, avoided eye contact, and exhibited anxiety, sadness, decreased appetite, insomnia, decreased energy level, and decreased ability to concentrate. Dr. Lattimer diagnosed "A" with dysthymic disorder and major depressive disorder and determined that "A" exhibited symptoms typical of post-traumatic stress syndrome. At trial, Dr. Lattimer testified that in her opinion "A" had been sexually abused.

On the basis of this evidence, defendant was indicted for three counts of first-degree rape in violation of N.C. Gen. Stat. § 14–27.2 (1999), three counts of indecent liberties with a child in violation of N.C. Gen. Stat. § 14–202.1 (1999), three counts of first-degree sexual offense in violation of N.C. Gen. Stat. § 14–27.4 (1999), and

2

three counts of incest in violation of N.C. Gen. Stat. § 14–178 (1999). Prior to trial, defendant filed a motion for a bill of particulars requesting the precise date, time and place of the crimes charged and the specific sexual acts constituting the indecent liberties and first-degree sexual offense charges. This motion was denied, and the cases were joined for trial.

At the close of the State's evidence, eight charges were dismissed, leaving one count of first-degree rape, one count of indecent liberties with a child, one count of first-degree sex offense and one count of incest, all of which occurred between 17 August 1996 and 17 August 1997. Defendant presented evidence consisting only of his testimony denying the allegations. Thereafter, the jury found defendant guilty of all charges. He was sentenced to a minimum of 240 months and a maximum of 297 months for first-degree rape, and a minimum of 192 months and a maximum of 240 months for first-degree sexual offense, incest, and indecent liberties with a child, to be served at the conclusion of his rape sentence.

State v. Youngs, 141 N.C. App. 220, 222–23, 540 S.E.2d 794, 796–97 (2000).

Petitioner appealed and, on December 29, 2000, the North Carolina Court of Appeals issued an opinion finding no error in the trial court below. Id. at 236, 540 S.E.2d at 804. Petitioner further appealed. On March 1, 2001, the North Carolina Supreme Court issued an order dismissing petitioner's notice of appeal and denying the petition for discretionary review. State v. Youngs, 353 N.C. 397, 547 S.E.2d 430 (2001). Petitioner did not file a petition for certiorari in the United States Supreme Court. See Pet. [D.E. 1] at 2. Petitioner was represented by counsel at trial and on appeal. See Resp't Ex. 1 [D.E. 13-2] (printout of Dec. 29, 2000, N.C. Court of Appeals Opinion); Resp't Ex. 2 [D.E. 13-3] (printout of Mar. 1, 2001, N.C. Supreme Court Order); Resp't Ex. 3 [D.E. 13-4] (record on appeal); Resp't Ex. 4 [D.E. 13-5] (Pet'r's appellate br.); Resp't Ex. 5 [D.E. 13-6] (State's appellate br.); Resp't Ex. 6 [D.E. 13-7] (Pet'r's reply br.); Resp't Ex. 7 [D.E. 13-8] (Pet'r's Notice of Appeal and Petition for Discretionary Review in the N.C. Supreme Court).

On January 2, 2018, petitioner filed *pro se* a motion for appropriate relief ("MAR") in Brunswick County Superior Court. Resp't Ex. 8 [D.E. 13-9] (Pet'r's MAR). On March 2, 2018, the Honorable James G. Bell issued an order appointing Katherine M. Maden ("Maden") as

3

counsel and allowing Maden thirty days to file an amended MAR on plaintiff's behalf. Pet. Attach. [D.E. 1-2] at 4–6. On May 4, 2018, Maden filed an amended MAR. Id. at 7–9. On June 7, 2018, Judge Bell summarily denied the MAR. Id. at 10. Petitioner then filed the instant habeas petition.

## Petitioner's Arguments:

First, petitioner alleges ineffective assistance of counsel because his trial attorney failed to "do a rape kit" or to investigate witnesses, petitioner's alibi, petitioner's family history, or the lack of medical evidence to support sexual abuse allegations. Pet. [D.E. 1] at 5. Second, petitioner alleges vindictive prosecution because the prosecutor "argued" with the trial judge. Id. at 6 (citing trial tr. pages 11–15, 26–29, and 173–76). Third, petitioner alleges "improper conduct" because the prosecutor expressed personal opinions about petitioner and his girlfriend as well as personal beliefs as to petitioner's guilt and credibility. Id. at 8 (citing trial tr. pages 14–37). Fourth, petitioner contends that, because his trial attorney, Thomas P. Heller ("Heller"), "knew nothing of the Bill of Particulars," petitioner was deprived of a defense "regarding the child's memory of specific dates of the offense." Id. at 10 (citing trial tr. pages 3–8). Fifth, petitioner alleges a "conflict of interest" because his former counsel, Attorney Roger Lee Edwards, worked for the Brunswick County Department of Social Services and possessed a nude picture of petitioner for use in petitioner's defense that Attorney Heller never received.[1] See Pet. Attach. [D.E. 1-1] at 5.

## Discussion:

Respondent argues that the instant petition is time-barred. Resp't Mem. [D.E. 13] at 3.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires an individual in custody pursuant to the judgment of a state court to file any application for a writ of habeas corpus within one year of the latest of:

---

[1] Petitioner's filings reflect that Attorney Edwards represent petitioner pretrial and withdrew from the case two months prior to petitioner's April 1999 trial. See Pet. [D.E. 1] at 12; Pet. Attach [D.E. 1-2] at 8.

4

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); see Frasch v. Peguese, 414 F.3d 518, 521 (4th Cir. 2005).

AEDPA's one-year limitation period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); see Hernandez v. Caldwell, 225 F.3d 435, 438–39 (4th Cir. 2000). An application for post-conviction review is pending from initial filing in state court until final disposition in the highest state court. See Taylor v. Lee, 186 F.3d 557, 560–61 (4th Cir. 1999). However, the running of AEDPA's limitation period resumes once the state's highest court resolves the state post-conviction proceedings. Harris v. Hutchinson, 209 F.3d 325, 327–28 (4th Cir. 2000). Moreover, the time between when a petitioner's conviction becomes final and when a petitioner files a state application for post-conviction relief also counts against AEDPA's limitation period. Id. at 328; see also Holland v. Florida, 560 U.S. 631, 635–38 (2010).

Section 2244(d)(1)(A) requires the court to determine when petitioner's judgment became final. See 28 U.S.C. § 2244(d)(1)(A). Here, because he did not petition the United States Supreme Court for a writ of certiorari, see Pet. [D.E. 1] at 2, petitioner's conviction became final not later than May 30, 2001, ninety days after the North Carolina Supreme Court dismissed his Notice of Appeal and denied his Petition for Discretionary Review on March 1, 2001. See Gonzalez v.

5

Thaler, 565 U.S. 134, 150 (2012) (reaffirming that "the judgment becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in this Court, or in state court, expires."); Clay v. United States, 537 U.S. 522, 527 (2003) (finding that, in the context of postconviction relief: "Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires" (citations omitted)); see also Supreme Court Rule 13.1 (providing ninety (90) days after entry of judgment to file petition for writ of certiorari in the Supreme Court).

Neither party claims that State action prevented petitioner's timely filing of his habeas petition, or that the Supreme Court has made retroactively applicable to cases on collateral review a newly recognized constitutional right relevant to this case. Cf. 28 U.S.C. § 2244(d)(1)(B), (C).

As to section 2244(d)(1)(D), respondent argues, and the court agrees, that the factual predicate for the claims in this petition "could have been discovered through the exercise of due diligence" by, at the latest, the date that petitioner's conviction became final. See Resp't Mem. [D.E. 13] at 5 (citing Wade v. Robinson, 327 F.3d 328, 333 (4th Cir. 2003) (holding the one-year limitation period under § 2244(d)(1)(D) starts when a petitioner could have discovered the factual predicate "through public sources"), cert. denied, 540 U.S. 912 (2003); Green v. Johnson, 515 F.3d 290, 305 (4th Cir. 2008) (reaffirming the holding in Wade), cert. denied, 553 U.S. 1076 (2008)).

Thus, in this case, AEDPA's one-year limitation period began when petitioner's conviction became final and ran uninterrupted for 365 days until it expired. Petitioner's January 2, 2018, MAR did not reopen his time for filing a habeas petition. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000). Accordingly, absent equitable tolling, the instant habeas petition is untimely.

Equitable tolling of AEDPA's one-year limitation period applies only if a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

6

stood in his way and prevented timely filing." Holland, 560 U.S. at 649 (quotation omitted); see Green, 515 F.3d at 304. A court may allow equitable tolling under section 2244 "in those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Green, 515 F.3d at 304 (quotations omitted); see Jackson v. Kelly, 650 F.3d 477, 491–92 (4th Cir. 2011). "[A]ny invocation of equity to relieve the strict application of a statute of limitations," however, "must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Harris, 209 F.3d at 330.

Here, although petitioner asserts that he diligently pursued his rights, see [D.E. 16] at 1, petitioner does not allege, and the record does not reflect, that any extraordinary circumstance prevented petitioner from timely filing a federal habeas petition within one year of the date that his conviction became final. Cf. Holland, 560 U.S. at 649. Although petitioner contends that he was unfamiliar with the law and lacked legal representation during that timeframe, see Pet'r's Resp. [D.E. 15] at 1–2, these are insufficient grounds to support a finding of equitable tolling. See United States v. Sosa, 364 F.3d 507, 512–13 (4th Cir. 2004); Harris, 209 F.3d at 330–31 (collecting cases). Accordingly, because petitioner as not made the requisite showing, equitable tolling is not warranted. See Holland, 560 U.S. at 649; Green, 515 F.3d at 304.

To the extent petitioner asserts he is innocent of his crimes of conviction, see [D.E. 16] at 1–2; [D.E. 17], a habeas petitioner may overcome AEDPA's one-year limitation period upon a showing of "actual innocence." McQuiggin v. Perkins, 569 U.S. 383, 393–94 (2013); see Finch v. McKoy, 914 F.3d 292, 294 (4th Cir. 2019); Hayes v. Carver, No. 17-7441, 2019 WL 1757684, at *2–4 (4th Cir. Apr. 22, 2019). Although actual innocence, if proved, serves as a "gateway" to the review of time-barred or otherwise procedurally barred federal claims, "tenable actual-

7

innocence gateway pleas are rare" because "'a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin, 569 U.S. at 386 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)); see Teleguz v. Pearson, 689 F.3d 322, 329 (4th Cir. 2012). To present a credible actual-innocence claim, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324; see Bousley v. United States, 523 U.S. 614, 623 (1998) (noting "'actual innocence' means factual innocence, not mere legal insufficiency." (citation omitted)).

Here, petitioner's actual-innocence claim is unsupported by such "new reliable evidence," and his bald contentions fail to satisfy the exacting Schlup standard. Accordingly, the court grants respondent's motion to dismiss the petition as time-barred under 28 U.S.C. § 2244(d)(1).

Finally, because reasonable jurists would not find the court's treatment of any of these claims debatable or wrong, and because none of the issues are adequate to deserve encouragement to proceed further, the court also will deny a Certificate of Appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Conclusion:

For the reasons discussed above, the court: GRANTS the motion to dismiss [D.E. 12]; DISMISSES WITHOUT PREJUDICE the petition as time-barred under 28 U.S.C. § 2244(d)(1); DENIES a Certificate of Appealability; and DIRECTS the clerk to close the case.

SO ORDERED. This 3d day of June 2020.

Richard E. Myers II
RICHARD E. MYERS II
United States District Judge